IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOVAN D. NORTON, | ) | CASE NO. 1:16CV864 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| BRIGHAM SLOAN, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Jovan Norton ("Petitioner" or "Norton") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Norton is detained at the Lake Erie Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of two counts of kidnapping and one count of aggravated robbery, all with one- and three-year firearm specifications; the court thereafter found him guilty of having weapons while under a disability.  *State v. Norton*, Case No. CR-13-578127-B (Cuyahoga Cty. Common Pleas Ct., filed August 8, 2014).  At sentencing, the trial court merged the two kidnapping counts; the aggravated robbery and having weapons under a disability counts; and the gun specifications, and sentenced Norton to three years on the gun specification and four years for kidnapping, to be served consecutively; and three years on the gun specification and four years for aggravated robbery, to be served consecutively but concurrently with the prior counts, for an aggregate sentence of 7 years in prison.  Doc. 5-1, p. 10.

On April 1, 2016, Norton filed his Petition for Writ of Habeas Corpus setting forth seven grounds for relief.  Doc. 1, pp. 9-16.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Grounds 3, 5, 6 and 7 are procedurally defaulted; Grounds 1 and 2 are not cognizable,

1

procedurally defaulted and fail on the merits; and Ground 4 is not cognizable. Thus, the

undersigned recommends that Norton's Petition for Writ of Habeas Corpus (Doc. 1) be

**DISMISSED**.

## I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A.  State Court Action

#### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga

County Court of Appeals, Eighth Appellate District of Ohio:[1]

> {¶ 3} John Currie, the victim, testified that on May 26, 2013, after he finished his shift at
> Seaway Foods and while standing outside of his car, he was approached by Norton.
> According to Currie, he knew Norton from his past association with a gang called the
> Vice Lords—they both were members between 1993 and 1995, but Currie left the gang.
> Currie further testified that a work colleague, Andre Wilson, who was also a member of
> Vice Lords, had been approaching him lately about returning to the gang.

> {¶ 4} Currie testified that Norton greeted him and then quickly revealed that he was there
> to collect "dues" from Currie. According to Currie, Norton threatened him and warned
> him not to run when Currie stepped back. Believing that Norton had a gun, Currie
> followed his instructions and got in his car with Norton, who then told Currie that he
> wanted $300 and instructed him to drive to "Mookie's," a liquor store on Miles Road.
> While inside Mookie's, Currie pulled his money out of his wallet, at which point Norton
> "snatched it" and started counting it. Currie "tried to run out of store" but Andre Wilson
> was standing at the door, along with two other individuals.

> {¶ 5} Currie further testified that Norton then instructed Sean, one of the individuals
> blocking the door, to drive with Currie to Sean's house. Currie testified that, instead of
> driving to Sean's house, he drove to the Rascal House and ran inside, asked for help, and

---

[1]  Norton has not demonstrated by clear and convincing evidence that the state court's findings were incorrect.
Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d
at 397.

then passed out. According to Currie, he woke up to water being thrown in his face and then Norton placing him in a choke hold and dragging him out of the store. Eventually, the EMS arrived and took Currie to the hospital. While en route to the hospital, Currie told the EMS workers that he had just been kidnapped and robbed.

{¶ 6} Felicia Sawyer testified that she was working at the Rascal House on May 26, 2013, and recalled seeing Currie "staggering, holding his chest" outside the store before walking inside, sitting down, and ultimately falling on the floor. Sawyer called 911. Sawyer further testified that there were no other customers in the store at that time but that the other gentleman who was in the car with Currie came inside after being on his phone and then another car pulled up with two individuals, who also walked inside. Sawyer corroborated Currie's testimony regarding the water being poured on him and ultimately being dragged out of the store. According to Sawyer, Currie appeared to be fearful of the other men but never stated that he had been robbed or kidnapped when he entered the store. Sawyer testified that the EMS arrived seconds after the men had placed Currie in his car.

{¶ 7} The state also offered the testimony of the first responders to the 911 call. Maple Heights Fire Department paramedic, Jim Hamrick, testified that when he arrived on the scene, Currie was being assisted by the firefighters already there. Hamrick asked the four gentlemen that were behind Currie if they were Currie's friends, and they indicated that they were and that they were planning on taking him to the hospital in his car. According to Hamrick, Currie was very insistent about getting his keys back and appeared to be very nervous. At that point, Currie was placed into the squad and checked for signs of a stroke. Hamrick testified that Currie disclosed, while they were heading to the hospital, that "he made that up to get out of the situation"; "those men weren't his friends, that they were going to kidnap him and take him somewhere to kill him." Hamrick further testified that there were no medical issues and that the entire incident seemed to be "more a means to get him out of a situation."

{¶ 8} Bedford Heights police detective Ericka Payne testified that she investigated Currie's allegations after he reported the incident to the police while in the hospital. Det. Payne first interviewed Currie and then followed up with his reports. She went to Currie's place of employment and recovered video surveillance from the day in question that corroborated Currie's story. Det. Payne also went to Mookie's beverage store, spoke with the owner, and requested the video surveillance footage from inside the store on the day of the incident. Det. Payne testified that she reviewed the video at Mookie's but was not able to obtain a copy the same day because the owner did not know how to copy it. The owner indicated that he would call his "IT guy" and provide a copy later. Det. Payne explained, however, that the IT guy subsequently copied the wrong portion of the video surveillance and that the correct footage had already been purged by the time that Det. Payne caught the mistake.

{¶ 9} Det. Payne also testified that she interviewed the Rascal House employee who observed Currie on the day of the incident. Det. Payne further requested video surveillance from the Rascal House but none was available.

{¶ 10} On cross-examination, Det. Payne acknowledged that she never interviewed Norton.

{¶ 11} Norton presented three witnesses on his behalf, including himself. Michael Walker, a co-worker and friend of both Andre Wilson and Currie, as well as Norton's friend, testified that he personally witnessed Wilson loan $300 to Currie, which Currie agreed to repay. Walker further testified that Currie later avoided Wilson and never repaid the loan.

{¶ 12} Norton testified on his own behalf. According to Norton, on May 26, 2013, he was getting a ride from Wilson to a barbecue at a relative's house. Prior to heading to the barbecue, they stopped at Currie's work to pick up the money that Currie owed Wilson. According to Norton, he greeted Currie and asked for Wilson's money, to which Currie indicated that he needed to go to an ATM. Norton accompanied Currie in his car, and the two drove to Mookie's liquor store. After exiting the store, Norton left in Wilson's car to go to the barbecue, and Currie got into his car with a third individual, who Norton did not know. Norton further testified that Wilson received a call that Currie was having a medical problem at the Rascal House so they drove over there. Norton stated that he attempted to revive Currie while there. Norton further testified that he does not carry a gun and was not carrying one on the day in question.

{¶ 13} The defense recalled Det. Payne to the stand and questioned her regarding the videotaped interview of Currie. Det. Payne testified that Currie never reported actually "seeing" a gun on Norton. Det. Payne indicated that Currie stated he felt "what felt like a gun" and indicated more than once that he believed that Norton had a gun on him.

*State v. Norton*, 2015 WL 3899221, at ** 1-3 (Ohio Ct. App. June 25, 2015).

### 2.  Procedural History

The September 2013 term of the Cuyahoga County Grand Jury indicted Norton on one count of kidnapping, R.C. § 2905.01(A)(3), carrying a one-year and a three-year firearm specification; one count of kidnapping, R.C. § 2905.01(A)(2), carrying a one-year and a three-year firearm specification; one count of aggravated robbery, § 2911.01(A)(1), carrying a one-year and a three-year firearm specification; and one count of having weapons while under a disability, R.C. § 2923.13(A)(3).  Doc. 5-1, pp. 3-5.  Norton, through assigned counsel, pleaded not guilty.  Doc. 5-1, p. 6.

Norton waived a jury trial as to the weapons under a disability count and the case proceeded to trial.  Doc. 5-1, pp. 7-8.  The jury found Norton guilty on all three counts and the

trial court found Norton guilty of having weapons while under a disability. Doc. 5-1, p. 9.  On

September 10, 2014, the trial court merged the two kidnapping counts; the aggravated robbery

and having weapons under a disability count; and the gun specifications; and sentenced Norton

to three years on the gun specification and four years for kidnapping, to be served consecutively;

and three years on the gun specification and four years for aggravated robbery, to be served

consecutively but concurrently with the prior count, for an aggregate sentence of 7 years in

prison.  Doc. 5-1, p. 10.  The court also ordered Norton to pay restitution of $470.00.  Doc. 5-1,

p. 11.

### B. Direct Appeal

On October 6, 2014, Norton, through counsel, filed a notice of appeal with the Ohio

Court of Appeals.  Doc. 5-1, p. 13.  In his brief, he raised the following assignments of error:

> 1. The Defendant should have been permitted to impeach the victim with his
> statement to police concerning his opinion of the robbery and personal
> experience with robberies.
>
> 2. The trial court erred by permitting the police detective to testify that she
> viewed a video of the crime when the court had previously ruled that such
> testimony was inadmissible.
>
> 3. The trial court's instruction that the jury should merely disregard Mr. Currie's
> statement that his testimony could cost him his life was insufficient to protect
> against the prejudice that the statement presented.
>
> 4. The jury's verdict as to the gun specifications were against the manifest
> weight of the evidence.
>
> 5. The trial court erred in ordering the Defendant to pay restitution in the amount of $470.

Doc. 5-1, p. 25.  On June 25, 2015, the Ohio Court of Appeals overruled Norton's first four

assignments of error, but sustained his fifth assignment of error regarding the amount of

restitution Norton was required to pay.  Doc. 5-1, pp. 78-96.  The Court of Appeals remanded the

restitution order to the trial court and instructed the court to limit the amount of restitution to

$175.00.  Doc. 5-1, p. 96.

### C. Ohio Supreme Court

On July 31, 2015, Norton, *pro se*, filed a notice of appeal with the Ohio Supreme Court.

Doc. 5-1, pp. 97-98.  In his memorandum in support of jurisdiction, Norton raised the following

propositions of law:

> 1. The defendant should have been permitted to impeach the victim with his
> statement to police concerning his opinion of the robbery and personal
> experience with robberies.
>
> 2. The trial court erred by permitting the police detective to testify that she
> viewed a video of the crime when the court had previously ruled that such
> testimony was inadmissible.
>
> 3. The trial court's instruction that the jury should merely disregard Mr. Currie's
> statement that his testimony could cost him his life was insufficient to protect
> against the prejudice that the statement presented.
>
> 4. The jury's verdict as to the gun specifications were against the manifest
> weight of the evidence.

Doc. 5-1, p. 118.  On October 28, 2015, the Ohio Supreme Court declined to accept jurisdiction

pursuant to S. Ct. Prac. Rule 7.08(B)(4).  Doc. 5-1, p. 127.

### D.  Application to Reopen Appeal pursuant to Rule 26(B)

On September 2, 2015, Norton, *pro se*, filed an Application to Reopen pursuant to Ohio

App. R. 26(B) with the Ohio Court of Appeals.  Doc. 5-1, p. 128.  He raised the following

assignments of error:

> 1. Appellant was denied effective assistance of counsel as guaranteed by the
> Sixth and Fourteenth Amendments to the United States Constitution and
> Article I, Section 10 of the Ohio Constitution where his appellate counsel
> omitted a dead bang winner, prejudicing appellant of receiving a full review
> by the court.
>
> 2. Appellant's mere presence in a vehicle in which he was receiving a ride to a
> relative's home, while in route to said relative's home being in the company

of the driver of said vehicle, who just happen to stop in route to request money owed to said driver by the alleged victim, there was no evidence that they had [a] plan, that appellant possessed a gun during [the] incident, or that he assisted in a crime if no crime actually took place, the evidence was insufficient to support his convictions, in violation of his Constitutional rights under the Sixth and Fourteenth Amendments to the United States and Article I, Section 10 of the Ohio Constitution.

Doc. 5-1, pp. 131-132.  On November 23, 2015, the Ohio Court of Appeals denied Norton's application to reopen as meritless.  Doc. 5-1, pp. 153-164.  Although Norton appeared to file an appeal to the Ohio Supreme Court in January 2016, the Ohio Supreme Court returned his appeal to him unfiled because (1) it was late and (2) a defendant may not file a delayed appealed of a Rule 26(B) denial.  *See* Docs. 8-5, 8-2.

### E. Federal Habeas Petition

On April 1, 2016, Norton, pro se, filed his Petition for a Writ of Habeas Corpus.  Doc. 1. He listed the following grounds for relief:

**Ground One**: The defendant should have been permitted to impeach the victim with his statement to police concerning his opinion of the robbery and personal experience with robberies.

**Ground Two**: The trial court erred by permitting the police detective to testify that she viewed a video of the crime when the court had previously ruled that such testimony was inadmissible.

**Ground Three**: The trial court's instruction that the jury should merely disregard Mr. Currie's statement that his testimony could cost him his life was insufficient to protect against the prejudice that the statement presented.

**Ground Four**: The jury's verdict as to the gun specification were [sic] against the manifest weight of the evidence.

**Ground Five**: Petitioner was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution where his appellate counsel omitted a dead bang winner, prejudicing petitioner of receiving a full review by the court.

**Ground Six**: Petitioner's mere presence in a vehicle in which he was receiving a ride to a relative's home, while in route to said relative's home being in the company of the driver of said vehicle, who just happen[ed] to stop in route to request money owed to said driver

by the alleged victim, there was no evidence that they had a plan, that petitioner possessed a gun during [the] incident, or that he assisted in the crime if no crime actually took place. The evidence was insufficient to support his convictions, in violation of his Constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

**Ground Seven**: Petitioner contends that, when a court has imposed a fine and imprisonment, where the statute only conferred to punish by fine or imprisonment, and the fine has been paid, it cannot, even during the same term, modify the judgment by imposing imprisonment instead of the former sentence.  The judgment of the court having been executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court as to that offence is at an end.  A second judgment on the same verdict is, under such circumstances, void for want of power, and it affords no authority to hold the party a prisoner, and he must be discharged.

Doc. 1, pp. 9-16.  On June 17, 2016, Respondent filed a Return of Writ (Doc. 5) and Norton filed a Traverse on August 26, 2016 (Doc. 8).  In his Return of Writ, Respondent argues that all Norton's grounds, except Ground 6, are not cognizable; that Grounds 3, 5, 6 and 7 are procedurally defaulted; and that Ground 6, alternatively, fails on the merits. Doc. 5, pp. 8-18.

## II. Law

### A.  Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S.

107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to

9

petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error.  *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (19*91*), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750.

**Merits Review**.  In order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United

10

States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id. at 413*. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principals and standards flowing from Supreme Court precedent. *Id. at 412*; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also*

*Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

Norton sets forth seven grounds for relief in his Petition.  Doc. 1, pp. 9-16.  For convenience, the Court considers Norton's claims out of sequential order.  The undersigned recommends the Court find that Grounds 3, 5, 6 and 7 are procedurally defaulted; Grounds 1 and 2 are not cognizable, procedurally defaulted and fail on the merits; and Ground 4 is not cognizable.

### A. Grounds 3, 5, 6 and 7 are procedurally defaulted

#### 1. Ground 3

In Ground 3, Norton argues that the trial court's evidentiary curative instruction to the jury regarding a statement the victim made was erroneous.  Doc. 1, p. 12.  He explains that, when the victim took the stand to testify, he stated that he was "stressed out" because his testimony could cost him his life.  Doc. 8, p. 10; Doc. 6, p. 42.  Norton contends that the trial court's instruction to the jury to disregard the victim's statement was insufficient to protect against the "unrepairable prejudice" this statement caused Norton at trial.  Doc. 8, p. 10.

At trial, Norton's counsel did not object to the trial court's curative instruction to the jury.  Doc. 6, pp. 42-43.  Ohio has a long standing and consistently enforced contemporaneous objection rule that prohibits a court from reviewing a claim on appeal that was not objected to at trial.  *See State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001) ("The waiver rule requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review. The rule is of long standing, and it goes to the heart of an adversary system of

justice."). Under the contemporaneous objection rule, the court "may take notice of waived errors only if they can be characterized as 'plain errors.'" *Id.*; Ohio R. Crim. P. 52(B).

On direct appeal in Norton's case, the Ohio Court of Appeals noted that Norton's counsel did not object to the trial court's curative instruction and, enforcing the state procedural rule, considered whether the trial court committed plain error. *Norton*, 2015 WL 3899221, at *5. The Court of Appeals found that the trial court did not commit plain error. *Id.* When the Ohio Court of Appeals, citing Norton's failure to object at trial, applied plain error review, it invoked a procedural bar—Ohio's contemporaneous-objection rule. *Awkal v. Mitchell*, 613 F.3d 629, 648-649 (6th Cir. 2010) ("This court has held that [Ohio's] contemporaneous-objection rule is an adequate and independent state ground barring federal habeas review[,]" citing *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Lundren v. Mitchell*, 440 F.3d 754 (6th Cir. 2006)). A district court may not entertain a habeas petition when the state court applies a procedural bar declining to address a petitioner's claims and the procedural bar "is independent of the federal question and adequate to support the judgment." *Id.* at 648 (quoting *Coleman*, 501 U.S. at 729). A state court's plain-error review of a procedurally defaulted claim for failure to object at trial is no exception to this rule. *Id.* at 648-649.

Applying the *Maupin* factors to this case, the undersigned finds that Ohio's contemporaneous objection rule is a state procedural rule applicable to Norton's claims, he failed to comply with that rule, and the Ohio Court of Appeals enforced the procedural rule when it applied plain error review. 785 F.2d at 138; *see also Durr v. McLaren*, 2015 WL 5101751, at *2 (6th Cir. Aug. 28, 2015) (first two prongs for procedural default are met when the petitioner failed to object at trial and the state court applied plain error review). As noted, Ohio's contemporaneous objection rule is an adequate and independent state ground barring federal habeas review. *Id.*; *Awkal*, 613 F.3d at 648-649. That the Ohio Court of Appeals analyzed

Norton's claims under plain error review does not save these claims from procedural default.  *Id*. (citing *Lundgren*, 440 F.3d at 765).[2]  And Norton does not allege, let alone demonstrate, cause for his failure to follow the procedural rule.  He makes no mention of his failure to object at trial in his Petition or in his Traverse.  As for prejudice, although he asserts that the trial court "should have gone further by offering [] a more detailed instruction," he does not state what that more detailed instruction would have been.

Nor has he shown that he has suffered a fundamental miscarriage of justice, i.e., that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Norton generally argues that his attorney failed to use information "that was part of the record" to impeach the victim's testimony—"pictures of [Norton's] cell phone text messages" that purport to show that the victim had contact with him prior to May 26, 2013, allegedly in contrast to the victim's testimony that he had not had contact with him prior to May 26.  Doc. 8, p. 14 (citing testimony of the victim, Doc. 6-2, pp. 33-36).  Norton includes an apparent screen shot of the alleged text messages with his Traverse.  Doc. 8-2.  First, these screen shots are not authenticated in any way. Second, the messages purport to be from an individual called "cvln kaine," who is not the victim in this case.  Third, the victim did not testify that he did not have contact with Norton prior to

---

[2]  The *Lundgren* Court explained, "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." 440 F.3d at 765 (citing *Scott v. Mitchell*, 209 F.3d 854, 866-867 (6th Cir. 2000)).

May 26, 2013. Instead, the victim testified that he stopped associating with "Vice Lord" gang members in 1995, when he went to jail, and that he did not see any Vice Lord gang members until he started his job, which he began a few years prior to the events in this case. *See, e.g.*, Doc. 6-2, pp. 30, 33-37. Indeed, the victim described frequently interacting with people who were former or current gang members. *Id*. pp. 37-50. He explained that he was no longer part of the gang. *Id*. There was little discussion during the victim's testimony differentiating between his contact with individuals who had been Vice Lord gang members and individuals who were current Vice Lord gang members. *Id*. In other words, even if the text messages were between the victim and Norton, the fact that the victim communicated with Norton prior to May 26, 2013, does not show that the victim gave "perjured testimony," as Norton alleges. Doc. 8, p. 14. Therefore, it cannot be said that it is more likely than not, in light of these text messages, that "no reasonable juror would find [Norton] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

Because Norton cannot overcome the procedural bar, he has defaulted Ground 3.

### 2. Ground 5

In Ground 5, Norton argues that his appellate counsel was ineffective for failing to raise a "dead bang winner." Doc. 1, p. 15. In his Traverse, he explains that appellate counsel was ineffective for failing to raise on appeal two ways in which trial counsel was ineffective: "(1) the defense of mere presence;[3] and (2) prosecutorial misconduct by the prosecutor's use of perjured testimony with the knowledge and consent of the trial judge." Doc. 8, p. 15.

First, Norton never argued in his Rule 26(B) Application that appellate counsel was ineffective for failing to argue on direct appeal prosecutorial misconduct. He only argued that appellate counsel should have raised the "mere presence" defense. Doc. 5-1, p. 134.

---

[3] Norton's "defense of mere presence" is his argument that there was insufficient evidence to support his convictions. *See* Doc. 5-1, p. 132.

15

Accordingly, this second portion of Ground 5 is procedurally defaulted because Norton never presented it to any state court for review.  *See Williams*, 460 F.3d at 806 ("a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures,'" citing *O'Sullivan*, 526 U.S. at 848); *McMeans*, 228 F.3d at 681 (In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts).

Second, Norton procedurally defaulted all of Ground 5 because he never timely appealed the Ohio Court of Appeals' decision denying his Rule 26(B) Application to the Ohio Supreme Court and, thus, failed to present this claim through the state's "ordinary appellate review procedures."  *Williams*, 460 F.3d at 806.  And the Ohio Supreme Court does not accept delayed appeals of App. R. 26(B) Applications, so Norton can no longer pursue this claim.  *Id*.  He does not describe any cause to excuse this procedural default.  To the extent Norton asserts prejudice or a fundamental miscarriage of justice if this claim is not considered, his assertions is not compelling.  He merely advances the unsupported assertion that, had appellate counsel raised this issue it "would likely have had an impact on the outcome of the case" because the victim "concocted a story of false crimes that never happened" and committed perjury.  Doc. 8, pp. 15-16.  The undersigned disagrees.  As the Ohio Court of Appeals explained, "Based upon the testimony adduced at trial, and viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the offenses of kidnapping, aggravated burglary, having weapons while under disability, and firearms specifications proven beyond a reasonable doubt."  *State v. Norton*, 2015 WL 7571453, at *4 (Oh. Ct. App. Nov. 23, 2015).

Norton procedurally defaulted Ground 5.

### 3. Ground 6

16

In Ground 6, Norton argues that his convictions were not supported by sufficient evidence.  Doc. 1, p. 15; Doc. 8, pp. 17-20.  Norton did not raise this claim on direct appeal to the Ohio Court of Appeals or the Ohio Supreme Court, as he should have done.  *See Caudill v. Brigano*, 795 N.E.2d 674 (Ohio 2003) (sufficiency of the evidence claim should have been raised on direct appeal, citing *Ellis v. McMackin*, 602 N.E.2d 611 (Ohio 1992)).  Instead, he presented this sufficiency of the evidence claim to the Ohio Court of Appeals in his Rule 26(B) Application as the underlying reason why appellate counsel was ineffective.  However, raising sufficiency of the evidence in a Rule 26(B) Application in an attempt to show ineffective assistance of appellate counsel does not preserve Norton's underlying sufficiency of the evidence claim as a stand-alone constitutional claim.  *See* Ohio App. R. 26(B) (A Rule 26(B) Application for Reopening must be based on a claim of ineffective assistance of appellate counsel); *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("[A] Rule 26(B) application based on ineffective assistance cannot function to preserve the underlying substantive claim" because "the two claims are analytically distinct[,]" quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005) (internal quotation marks omitted)).  Thus, when the Ohio Court of Appeals considered and rejected Norton's sufficiency of the evidence claim, his second proposed assignment of error in his Rule 26(B) Application, it stated that it was considering the claim based on his assertion that counsel was ineffective for not raising it.  *Norton*, 2015 WL 7571453, at *2, 5 ("We find that Norton has failed to establish the claim of ineffective assistance of appellate counsel through his second proposed assignment of error[, insufficient evidence].");  *see also Roberts v. Carter*, 337 F.3d 609, 615 (6th Cir. 2003) ("In light of the requirements of Rule 26(B), the court's holding must be read as pertaining to the merits of [the petitioner's] ineffective assistance of appellate counsel claim, not his [underlying] state procedural rule claim.").  Accordingly, Ground 6 is procedurally

defaulted because Norton only presented it to the state courts as the underlying reason his appellate counsel was ineffective, not as a stand-alone constitutional claim as he presents it here.

To the extent Norton could argue that appellate counsel's failure to raise sufficiency of the evidence on direct appeal is cause to excuse his procedural default, such an argument would fail because Norton did not timely appeal the Ohio Court of Appeals' decision denying his Rule 26(B) Application to the Ohio Supreme Court.  In other words, Norton procedurally defaulted any ineffective assistance of counsel claim that he may have had, and, therefore, ineffective assistance of counsel cannot constitute cause to excuse his procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-451 (2000) (when a petitioner procedurally defaults a sufficiency of the evidence claim and procedurally defaults his ineffective assistance of counsel claim based on that underlying sufficiency of evidence claim, ineffective assistance of counsel cannot serve as cause to excuse the procedural default of the underlying claim unless the petitioner can show cause and prejudice to excuse the ineffective assistance of counsel procedural default).  Norton does not allege cause for failing to excuse his procedural default of his ineffective assistance of counsel claim or explain how he was prejudiced.  He merely cites to portions of the transcript wherein, he asserts, testimony contradicted the victim's testimony.  Doc. 8, pp. 19-20.  As the Ohio Court of Appeals noted in its determination of Norton's Rule 26(B) Application, "any rational trier of fact could have found the essential elements of the offenses of kidnapping, aggravated burglary, having weapons while under disability, and firearms specifications proven beyond a reasonable doubt."  *Norton*, 2015 WL 7571453, at *4.  Because Norton cannot overcome the procedural bar, Ground 6 remains procedurally defaulted.

**4. Ground 7**

In Ground 7, Norton argues that his detention is improper because the trial court imposed a fine and imprisonment.  Doc. 1, p. 16.  Norton did not present this claim to any state court; he procedurally defaulted this claim.  *See Williams*, 460 F.3d at 806.

In his Traverse, Norton presents a different argument—that the trial court erred in ordering him to pay $470.00 in restitution when the evidence at trial failed to establish that any money had been taken from the victim.  Doc. 8, p. 20.  First, a court is not required to address a theory of relief asserted only in a traverse but not in the habeas petition.  *See Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005)*).  Second, the Ohio Court of Appeals reversed the trial court's $470 restitution order.  Finally, this claim, arguably, was presented to the Ohio Court of Appeals on direct appeal (Doc. 5-1, p. 39), but was never presented to the Ohio Supreme Court.  Accordingly, it is procedurally defaulted.  *Williams*, 460 F.3d at 806.

### B. Grounds 1 and 2 are not cognizable, and to the extent they state a federal claim they are procedurally defaulted and fail on the merits

#### 1. Ground 1

In Ground 1, Norton argues that he should have been permitted to impeach the victim regarding the victim's statement to police wherein the victim allegedly told the police that the victim had committed robberies before and that, had the victim committed this robbery, he would have done it differently.  Doc. 1, p. 9; Doc. 8, p. 8.  The Ohio Court of Appeals considered this claim:

> {¶ 17} In his first assignment of error, Norton argues that the trial court abused its discretion in disallowing defense counsel from impeaching Currie with prior statements that Currie had given to the police regarding his assessment of Norton and his associates' tactics in committing the crimes. We disagree.

> {¶ 18} Evid.R. 402 provides that "[e]vidence which is not relevant is not admissible." Evid.R. 403(A) states that a judge must exclude evidence, regardless of its relevance, if "its probative value is substantially outweighed by the danger of unfair prejudice." *State v. Thompson*, 141 Ohio St.3d 254, 2014–Ohio–4751, 23 N.E.3d 1096, ¶ 112. Unfairly

prejudicial evidence usually appeals to the jury's emotions, rather than to intellect. *Oberlin v. Akron Gen. Med. Ctr*., 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001).

{¶ 19} We review a trial court's decision regarding the admission of such evidence under an abuse of discretion standard. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the ruling to be an abuse of discretion, i.e., unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E .2d 144 (1980). Further, an error in an evidentiary ruling does not warrant reversal of the trial court's judgment "unless the trial court's actions were inconsistent with substantial justice and affected the substantial rights of the parties." *State v. Azbell*, 5th Dist. Fairfield No. 04CA11, 2005–Ohio–1704, ¶ 151.

{¶ 20} Norton argues that Currie testified at trial that the robbery and kidnapping did not happen consistent with what he observed on television, which contradicted his statements to the police. As proffered by the defense counsel, Currie had previously stated to the police that the robbery attempts were "bush league" and that he would have acted differently—statements which he based on his past experiences in committing robberies. Norton contends that these statements should have been admissible to show that Currie was lying on the stand.

{¶ 21} Here, we cannot say that the trial court abused its discretion. As explained by the trial court, defense counsel's desire to probe Currie as to his past experience and expertise in the area of robberies would be more prejudicial than probative on the relevant issues in the case. Indeed, Currie's past expertise in robberies is not relevant to whether Norton committed the acts alleged by Currie, and defense counsel's desire to probe Currie's expertise in robberies would serve only to appeal to the jury's emotions. Given that the probative value of Currie's inconsistent statements is substantially outweighed by the danger of unfair prejudice, we find no abuse of discretion.

{¶ 22} The first assignment of error is overruled.

*Norton*, 2015 WL 3899221, at * 3-4.

Ground 1 is not cognizable because it challenges a state law evidentiary ruling, which is not permitted on federal habeas review. *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (claim that the Ohio trial court's evidentiary ruling on the admission of evidence is not cognizable on federal habeas review). To the extent Norton argues that the failure of the state court "to allow impeachment through these statements" is a violation of his Sixth Amendment right to a fair trial and to confront witnesses, (Doc. 8, p. 9), Norton

procedurally defaulted such a claim because he never presented it to the state courts as a violation of a federal constitutional right. *See Franklin*, 811 F.2d at 325; *Prather*, 822 F.2d at 1421 (a petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law); *McMeans*, 228 F.3d at 681 (In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts).

Finally, to the extent Ground 1 alleges a federal constitutional violation, it fails on the merits.  The Confrontation Clause of the Sixth Amendment protects a defendant's right to cross-examine witnesses. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).  This right is not absolute—the Constitution guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (emphasis in original).  Moreover, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Norton does not demonstrate that the trial court's evidentiary ruling prevented him from "directly challenging Mr. Currie's credibility," as he alleges (Doc. 8, p. 9).  At trial, Norton's counsel vigorously challenged the victim's credibility.  For instance, he specifically asked the victim about the discrepancy between the victim's statement to the police, wherein he did not state that he saw a gun, and the victim's testimony at trial, wherein he stated that he did see a gun. *See* Doc. 6-2, pp. 78-86.  Thus, Norton was not prevented from questioning the victim about his statement to the police and he was permitted to challenge, and did challenge, the victim's veracity.  The trial court did not violate Norton's constitutional right when it imposed a reasonable limit on cross

examination based on concerns about prejudice and confusion of the issues on an irrelevant item

of information: the victim's expertise committing robberies.  *Van Arsdall*, 475 U.S. at 679.

Accordingly, Ground 1 is not cognizable; to the extent Ground 1 alleges a federal

constitutional violation, it is procedurally defaulted and fails on the merits.

### 2.  Ground 2

In Ground 2, Norton argues that the trial court erred when it permitted the police

detective to testify that she viewed a video recording of the crime when the court had previously

ruled that testimony about the video was inadmissible.  Doc. 1, p. 10; 8, p. 9.  The Ohio Court of

Appeals considered this claim:

> {¶ 23} In his second assignment of error, Norton argues that the trial court erred in
> allowing Det. Payne to testify that she viewed a video of the crime when the court had
> previously ruled that such testimony was inadmissible.
>
> {¶ 24} The record reflects that, prior to trial, defense counsel moved to exclude any
> testimony regarding the video surveillance from Mookie's observed by the detective.
> Because the state was unable to turn over a copy of the video to the defense, the trial
> court excluded any testimony regarding the detective's impressions of the actions of
> people on the video. Norton complains that the following testimony was improperly
> admitted in contravention of the trial court's earlier ruling:
>
> > [Defense Counsel:] Q. I'm talking about a robbery and a kidnapping. Do we have
> > some other witness who saw this happen, this event, Mr. Currie being kidnapped
> > and robbed? Do we have a single other witness that viewed this other than John
> > Currie?
> >
> > THE COURT: You may answer if you know.
> >
> > [Det. Payne:] A. It was observed on video.
>
> {¶ 25} Even if we agreed that this testimony should not have been admitted, we find that
> any error is harmless. An error is harmless if it does not affect a substantial right of an
> accused. Crim.R. 52(A); *State v. Mims*, 8th Dist. Cuyahoga No. 100520, 2014–Ohio–
> 5338, ¶ 60. "The accused, therefore, has a constitutional guarantee to a trial free from
> prejudicial error, not necessarily one free of all error." *State v. Jones*, 8th Dist. Cuyahoga
> No. 101514, 2015–Ohio–2151, ¶ 58, citing *State v. Fears*, 8th Dist. Cuyahoga No. 89989,
> 2008–Ohio–2661, ¶ 14. And where there is no reasonable possibility that the unlawful
> testimony contributed to a conviction, the error is harmless and therefore will not be
> grounds for reversal. *Id*., citing *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976),

paragraph three of the syllabus, *vacated on other grounds, Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3134, 57 L.Ed.2d 1154 (1978).

{¶ 26} The record reveals that immediately after this, Det. Payne testified as follows:

> [Defense Counsel:] Q. Do you have a witness who was present who a witness statement was taken from who saw this event?
>
> [Det. Payne:] A. No.
>
> [Defense Counsel:] Q. No other evidence?
>
> [Det. Payne:] A. Of the robbery, no.
>
> [Defense Counsel:] Q. No? And we don't have a video from Mookie's?
>
> [Det. Payne:] A. Correct.
>
> [Defense Counsel:] Q. And we don't have a video from Rascal House?
>
> [Det. Payne:] A. Correct.

{¶ 27} We find that Det. Payne's one isolated statement that "it was observed on video" constitutes harmless error when reviewed in its entire context. Defense counsel immediately established that the state had no other witnesses who were present during the robbery that offered a statement to the police. We simply do not agree that Det. Payne's single reference to the video improperly contributed to Norton's conviction. Accordingly, we find that the error complained of was harmless beyond a reasonable doubt.

{¶ 28} The second assignment of error is overruled.

*Norton*, 2015 WL 3899221, at *4-5.

Here, again, Norton claims that the trial court's evidentiary ruling violated Ohio's best evidence rule and, therefore, describes a violation of state law that is not reviewable in a federal habeas claim.  *See Pulley*, 465 U.S. at 41; *Bey*, 500 F.3d at 519.  He does not identify a federal constitutional right that was violated in his Petition or Traverse; even if he had, he did not present this claim as a federal claim to any state court and it would be procedurally defaulted. *See Franklin*, 811 F.2d at 325; *Prather*, 822 F.2d at 1421.

23

Finally, Norton's claim fails on the merits.  A federal habeas court considers a state court's harmless error determination of a constitutional trial error under the standard set forth in *Brecht v. Abrahamson*—"whether the [complained of] error 'had substantial and injurious effect or influence in determining the jury's verdict.'" 507 U.S. 619, 623 (1993); *Davis v. Ayala*, 135 S.Ct. 2187, 2197 (2015) (when a state court applies a harmless error analysis, a habeas petitioner must show that the trial error "resulted in 'actual prejudice[,]'" quoting *Brecht*, 507 U.S.at 637); *Fry v. Pliler*, 551 U.S. 112, 119-120 (2007) (same).  This standard applies to "constitutional error[s] of the trial type[,]" *Brecht*, 507 U.S. at 638, including the evidentiary challenges, *Fry*, 551 U.S. at 114-116.  Norton does not demonstrate that any alleged trial error regarding the detective's complained-of testimony had a substantial and injurious effect or influence in determining the jury's verdict in his case.  He argues that the detective's testimony "must have confused and mislead the jury as all the other perjured testimony concerning this video indicated that the state was unable to obtain a copy of it[.]"  Doc. 8, p. 10.  The undersigned disagrees that the jury was misled and confused or that the testimony created a substantial and injurious effect or influence upon the jury's verdict.  The police detective had testified that there was a video taken at Mookie's and a video taken at Rascal House.  She explained that Mookie's later attempted to provide the police with a copy of the relevant portion of the video but that the IT employee from Mookie's copied the wrong portion of the tape.  She described how the Rascal House re-recorded its store video automatically after 48 hours, as was its custom, and that by the time she asked Rascal House for the video that 48 hour period had passed and the tape had been overwritten.  In other words, the jury was aware that there was no video evidence from Mookie's or Rascal House.  When defense counsel asked the detective whether "there was a single other witness that viewed this other than John Currie?" she answered, "It was observed on video."  Doc. 6-2, p. 220.  She then confirmed that there was no video from Mookie's and no video from

24

Rascal House.  *Id*., p. 221.  The police detective did not say that she viewed the event from the video or recite specifics.  Her testimony does not create an inconsistency to the other testimony at trial that there were no video recordings such that the jury was misled or confused.

Ground 2 is not cognizable; to the extent Ground 2 alleges a federal constitutional violation, it is procedurally defaulted and fails on the merits.

### C. Ground 4 is not cognizable

In Ground 4, Norton argues that the jury's verdict with respect to the gun specification is against the manifest weight of the evidence.  Doc. 1, p. 13.  Federal habeas corpus relief is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 US 1, 5 (2010).  A claim that a conviction is against the manifest weight of the evidence rests solely on state law and is not a cognizable claim in a federal habeas petition.  *See Ross v. Pineda*, 2011 WL 1337102, at *3 (S.D.Ohio April 11, 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins*, 678 N.E.2d 541 (Ohio 1997)).

Because Norton's manifest weight of the evidence claim in Ground 4 rests only on state law, it is not cognizable on federal habeas review.  *See id*.

**IV**. **Conclusion and Recommendation**

For the reasons stated above, the undersigned recommends that Norton's habeas Petition

be **DISMISSED** because Grounds 3, 5, 6 and 7 are procedurally defaulted; Grounds 1 and 2 are

not cognizable, procedurally defaulted and fail on the merits; and Ground 4 is not cognizable.

Dated: September 27, 2016

Kathleen B. Burke
United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of
Courts within fourteen (14) days after the party objecting has been served with a copy of this
Report and Recommendation.  Failure to file objections within the specified time may waive the
right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir.
1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).